UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROSEMARIE ROSE CURRY-COLLINS, Plaintiff, v. NANCY A. BERRYHILL, Acting Commissioner of Social Security, Defendant. | Case No. CV 16-03858 AJW MEMORANDUM OF DECISION |

Plaintiff seeks reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2-3]. In a December 3, 2014 written hearing decision that constitutes the Commissioner's final decision, an Administrative Law Judge ("ALJ") found that plaintiff had severe impairments consisting of arthritis and morbid obesity. The ALJ determined that plaintiff's impairments did not meet or equal a listed impairment, and that plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work. The ALJ further found that plaintiff's RFC did not preclude her from performing her past relevant work as an insurance office manager.

Accordingly, the ALJ concluded that plaintiff was not disabled at any time from her alleged onset date of August 16, 2011 through the date of the ALJ's decision. [Administrative Record ("AR") 1-6, 17-30].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Plaintiff's mental impairments**

Plaintiff contends that the ALJ erred in rejecting the opinions of a treating source and an examining source concerning the severity and functional effects of plaintiff's mental impairments. [See JS 5-34].

At step two of the sequential evaluation process, the ALJ determines whether a claimant has any severe, medically determinable physical or mental impairments that meet the durational requirement. See 20 C.F.R. §§ 404.920(a)(4), 416.920(a)(4). In assessing severity, the ALJ must determine whether a claimant's medically determinable impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities."[1] 20 C.F.R. §§ 404.1521(a), 416.921(a); Webb v.

---

[1] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b),

2

Barnhart, 433 F.3d 683, 686-687 (9th Cir. 2006). Symptom-related restrictions must be considered in determining severity, provided that the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms. Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *2. The ALJ may find a medically determinable impairment or combination of impairments "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (quoting Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996)).

The ALJ found that plaintiff had medically determinable depression and anxiety, but that those impairments were not severe. More specifically, the ALJ found that plaintiff had no limitation or mild limitation in all four broad functional areas used to determine severity: activities of daily living; maintaining social functioning; concentration, persistence or pace; and episodes of deterioration or decompensation in work or work-like settings. [See AR 20]. The ALJ said that he based that finding on his own review of the record and on the opinions of the non-examining state agency psychological consultants, Paul Klein, Ph.D. and Patrice G. Solomon, Ph.D., both of whom opined that plaintiff's mental impairments were not severe. [See AR 20-21, 113-115, 145-148].

Plaintiff contends that the ALJ's finding of no severe mental impairment is legally erroneous because he impermissibly rejected the March 2013 opinion of plaintiff's treating primary care physician, Steven H. Suchman, M.D., and the November 2012 opinion of the Commissioner's consultative examining psychiatrist, William Goldsmith, M.D. Plaintiff further contends that the ALJ's error was not harmless because his finding of no severe mental impairment led him to exclude any mental functional limitations from his RFC finding, and that even if the ALJ did not err in finding plaintiff's mental impairments nonsevere, the ALJ erred in failing to consider the combined effects of all of plaintiff's impairments, including his nonsevere mental impairments, in assessing plaintiff's RFC.

Plaintiff's contentions lack merit. The ALJ permissibly rejected the opinions of Dr. Suchman and Dr. Goldsmith. Moreover, even if the ALJ erred in finding no severe mental impairment at step two, any error was harmless in that the ALJ proceeded with the sequential evaluation and carefully considered the

---

416.921(b).

evidence regarding plaintiff's mental impairments in formulating plaintiff's RFC.[2] See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007 ) (holding that where the ALJ failed to consider or find the claimant's bursitis severe at step two, any error was harmless because the ALJ "extensively discussed" that impairment at step four, and the ALJ's "decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.") (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (recognizing that harmless error applies in the social security context)); Burch, 400 F.3d at 682-684 (holding that the ALJ did not commit reversible error by not considering the claimant's obesity or finding it severe at step two because the ALJ proceeded with the sequential analysis and adequately considered the claimant's obesity in making his RFC determination); see, e.g., Jerome v. Colvin, 542 F. App'x 566 (9th Cir. 2013) (holding that even if the ALJ committed legal error by incorrectly finding some of the claimant's impairments nonsevere, the ALJ proceeded with the sequential analysis and "considered evidence of *all* her impairments at step four. The fact that the ALJ discussed both [the claimant's] severe and non-severe impairments at step four renders the distinction between severe and non-severe impairments legally immaterial, and thus any alleged error was harmless.")

In March 2013, Dr. Suchman completed three questionnaires at plaintiff's request, one concerning plaintiff's "anxiety related disorder," one concerning her "depressive disorder," and one "physical capacity evaluation." [AR 346-360]. On the depressive disorder questionnaire, Dr. Suchman marked responses indicating that plaintiff exhibited persistent disturbance of mood accompanied by full or partial depressive syndrome, anhedonia, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. [AR 349]. Dr. Suchman opined that plaintiff's depressive disorder caused a "marked" impairment (one that "seriously affects ability to function independently, appropriately and effectively") in all four broad functional areas used to determine severity: activities of daily living; maintaining social functioning; concentration, persistence or pace; and episodes of deterioration or decompensation in work or work-like settings. [AR 351]. On the anxiety disorder questionnaire, Dr. Suchman marked responses indicating that plaintiff "exhibited generalized persistent

---

[2] Plaintiff does not contend that her mental impairments, singly or in combination with other impairments, met or equaled a listed impairment at step three.

4

anxiety" accompanied by "motor tension," and that she experienced "recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week[.]" [AR 346]. Dr. Suchman opined that plaintiff's anxiety related disorder caused mild impairment (one "of slight importance which does not affect ability to function") in her activities of daily living and mild episodes of deterioration or decompensation in work or work-like settings, and moderate impairment (one that "affects but does not preclude ability to function") in maintaining social functioning and in concentration, persistence or pace, resulting in failure to complete tasks in a timely manner. [AR 346]. Neither form asked Dr. Suchman to say how long plaintiff's impairments had lasted or were expected to last.

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ articulated specific, legitimate reasons supported by substantial evidence for rejecting Dr. Suchman's controverted opinion. First, he noted that those opinions consist of "checked boxes" without any supporting clinical findings. [AR 27]. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may permissibly reject check-off reports that [do] not contain any explanation of the bases of their conclusions.") (internal quotation marks, brackets, and ellipsis omitted).

Second, the ALJ permissibly concluded that Dr. Suchman's treatment records lack supporting clinical evidence or other "descriptive details" corroborating his opinion. Plaintiff presented to Dr. Suchman on August 16, 2011 (her alleged onset of disability date) with complaints of knee pain and "severe anxiety for the last few months. Really bad the last week or two." [AR 307]. Dr. Suchman diagnosed anxiety and prescribed Viibryd (vilazodone). He did not conduct a mental status examination or document any other clinical evidence corroborating plaintiff's subjective complaints of severe anxiety, nor did he note any mental functional limitations. [AR 307-308]. He advised plaintiff to follow up as needed. [AR 308]. That same day, Dr. Suchman completed a state disability insurance form stating that plaintiff was "incapable

of performing his or her regular or customary work" and would remain so for approximately four months. [AR 312]. Plaintiff's primary diagnoses was osteoarthritis of the knees (ICD-9[3] Diagnosis Code 715.90). Dr. Suchman noted that plaintiff exhibited x-ray evidence of arthritis, that she had been treated with nonsteroidal anti-inflammatory drugs, and that he had recommended that she get a knee injection (which she declined). [AR 307, 312]. Plaintiff's secondary diagnosis was anxiety (ICD-9 Diagnosis Code 300.00), but Dr. Suchman did not note any findings or treatment for that problem on the form. [AR 312].

Plaintiff returned to Dr. Suchman about eight months later, in April 2012, for follow-up on her joint problems. Dr. Suchman made no mention of any mental health complaints or symptoms, and he did not diagnose any mental impairment. Plaintiff's diagnoses were degenerative joint disease and obesity. [AR 310].

Another eight months passed before plaintiff returned to Dr. Suchman in January 2013. She complained of depression that had started gradually but was worsening, constant, and "moderate to severe." Dr. Suchman said that plaintiff described easy irritability, emotional lability, worrying, and sadness. He noted that plaintiff's previous treatment for depression (which, he said, had been six years earlier) was "initially effective," and that plaintiff had decreased the dosage of her anti-depressant medication on her own, but that her symptoms had worsened. Dr. Suchman diagnosed "major depressive disorder, recurrent episode, without mention of psychotic behavior." He made no mental status examination findings or other clinical findings. Along with medication for migraines and joint pain, Dr. Suchman prescribed Xanax (alprazolam) extended release tablets, 0.5 milligrams, once daily. [AR 27, 383-385].

During a May 2013 follow-up with Dr. Suchman, plaintiff reported that "her anti-depressant has not been working as well as it has in the past," but no other complaints or symptoms are noted. [AR 28, 379]. Dr. Suchman conducted a mental status examination and found no abnormalities. Plaintiff was fully oriented and exhibited appropriate judgment, good insight, intact recent and remote memory, normal mood, good eye contact, and normal affect. [AR 380]. Dr. Suchman did not change his diagnosis of major

---

[3] "ICD" is an acronym for "The International Classification of Diseases," a standard diagnostic tool published by the World Health Organization. "ICD-9" refers to the ninth revision of the ICD. See World Health Organization website, Classification of Diseases, *available at* http://www.who.int/classifications/icd/en/ (last visited May 16, 2017).

6

depressive disorder, recurrent episode. He said that plaintiff's depression needed "better control" and that the plan was to "change medications as prescribed," but nowhere in his progress notes is it indicated that he actually changed plaintiff's prescribed medications or dosage, either then or during her next and final documented follow-up with Dr. Suchman in March 2014, some ten months later. [AR 376, 380-382].

Plaintiff's March 2014 visit was to follow up "on her arthritis, migraines and the meds she uses for them . . . ." [AR 28, 376]. Dr. Suchman did not report any mental complaints or symptoms. Plaintiff's mental status examination was normal. Dr. Suchman continued to prescribe Xanax (alprazolam), 0.5 milligrams once daily, and his diagnosis of major depressive disorder, recurrent episode remained unchanged. [AR 3767-378].

The ALJ was entitled to rely on the lack of any abnormal mental status examination findings or other signs establishing a serious impairment to reject Dr. Suchman's March 2013 opinion and to conclude that plaintiff's depression and anxiety did no more than minimally limit her ability to perform basic work activities for any consecutive 12-month period and therefore were not severe. See generally Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (noting that although step two "requires a 'de minimis' showing of impairment," a claimant "must show more than the mere presence of a condition or ailment") (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

Plaintiff argues that Dr. Suchman properly relied on plaintiff's subjective complaints to diagnose and treat her mental impairment. [See JS 16-17]. While "mental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors)," Ferrando v. Comm'r of Soc. Sec. Admin. 449 F. App'x 610, 612 n.2 (9th Cir. Sept. 6, 2011), Dr. Suchman did not record any clinical observations, abnormal mental status examination findings, psychometric test results, or other psychiatric signs supporting the functional limitations he assessed. Instead, he appears to have relied exclusively on plaintiff's subjective symptoms, which, for the reasons described below, the ALJ permissibly discounted. See Burrell v. Colvin, 775 F.3d 1133, 1140-1141 (9th Cir. 2014) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.")(quoting Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.2008)); Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433-34 (9th Cir. 1988) (per curiam) (stating that medical conclusions are entitled to less weight to the extent that they rely on the claimant's properly

discounted subjective history).

Another reason cited by the ALJ for rejecting Dr. Suchman's opinion was his failure to refer plaintiff to a mental health specialist for additional treatment. The ALJ rationally inferred that if plaintiff's condition "were actually disabling, such a referral, or at least a discussion of a referral, would seem appropriate and likely." [AR 27]. Instead, Dr. Suchman's notes indicate that plaintiff obtained relief from relatively infrequent, episodic exacerbation of her depressive symptoms with her prescribed medication, making additional treatment unnecessary. See Johnson v. Shalala, 60 F.3d 1428, 1433-1434 (9th Cir.1995) (holding that the ALJ properly rejected a treating physician's uncontradicted disability opinion where the physician also opined that the claimant needed only a "program of conservative care"); see also Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling."). The reasons provided by the ALJ for rejecting Dr. Suchman's opinion were legally sufficient and supported by substantial evidence in the record.

The ALJ also rejected Dr. Suchman's opinion based in part on the analysis and opinions of the nonexamining state agency psychological consultants, Dr. Solomon and Dr. Klein, who conducted a longitudinal records review that included Dr. Suchman's treatment records through March 2013, Dr. Goldsmith's November 2012 consultative psychiatric examination report, and the June 2013 consultative psychiatric report by Stephan Simonian, M.D. [See AR 20-21, 25, 113-115, 145-148]. Drs. Klein and Solomon concluded that plaintiff's mental impairment was not severe because: (1) there is a very limited documented psychiatric history; (2) anxiety was only briefly mentioned in plaintiff's medical records: (3) there was no medical evidence in the record of "constellation or duration of [symptoms] meeting [major depressive disorder]"; (4) Dr. Suchman's opinion was entitled to less weight because he was not a psychiatrist; (5) Dr. Goldsmith's consultative medical opinion was "overly restrictive and inconsistent" with the medical evidence of record and plaintiff's mostly normal mental status examination; (6) plaintiff's mental status examination was "largely intact" during Dr. Simonian's June 2013 consultative examination; and (7) Dr. Simonian opined that plaintiff had only a mild limitation in her ability to adapt to common work stressors. [AR 113, 115, 145-147]. The nonexamining psychological consultants' analysis and opinions provide further support for the ALJ's evaluation of the medical opinion evidence and his finding of no severe mental impairment. See SSR 96-6P (stating that nonexamining state agency medical opinions may,

8

"[i]n appropriate circumstances . . . be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source s medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.").

Plaintiff also contends that the ALJ improperly evaluated the November 2012 opinion of Dr. Goldsmith, a consultative examining psychologist. [AR 326-330]. Dr. Goldsmith reviewed some medical records, interviewed plaintiff, and conducted a mental status examination. Plaintiff said that she continued to be depressed and to have "anxiety/panic attacks characterized by shortness of breath, increased pulse, and fear." [AR 327]. Plaintiff's mental status examination was significant for depressed facial expression, depressed mood, and blunted affect. [AR 328-329]. She was fully oriented and exhibited clear and coherent speech, organized and intact thought process, no grossly delusional thought content, no suicidal or homicidal ideation, no hallucinations, clear sensorium, intact memory, normal intelligence, average fund of knowledge, adequate insight and judgment, intact ability to abstract, and intact ability to concentrate and to perform calculations based on dates. [AR 328-329].

Dr. Goldsmith diagnosed panic disorder without agoraphobia and major depression. [AR 329]. He opined that plaintiff was not limited in her ability to understand, remember, and carry out both simple and complex instructions; maintain regular attendance; perform work activities on a consistent basis; and perform work activities without special or additional supervision. [AR 330]. Dr. Goldsmith opined that plaintiff was moderately impaired in her ability to associate with day-to-day work activity, including attendance and safety, and in her ability adapt to the stresses common to a normal work environment. He also opined that she was "slow" in the ability to maintain concentration, attention, persistence, and pace. [AR 330]. Her prognosis "depends on improvement in her orthopedic condition." [AR 330].

The ALJ did not err in rejecting Dr. Goldsmith's opinion because it was premised largely on plaintiff's properly discredited subjective complaints, including complaints of panic attacks that were not described or diagnosed by Dr. Suchman, and because it is inconsistent with plaintiff's limited history of mental health treatment. See Burrell, 775 F.3d at 1140-1141; Warre, 439 F.3d at 1006; Johnson, 60 F.3d

at 1433-1434. In addition, Dr. Simonian—who, like Dr. Goldsmith, was a board-certified psychiatrist—conducted a consultative psychiatric examination about six months later and concluded that plaintiff had no work-related functional limitations other than a mild limitation in the ability to adapt to common workplace stressors. [AR 374]. Although the ALJ did not discuss Dr. Simonian's opinion, he relied on the opinions of the state agency psychological consultants, who considered it. Any error in the ALJ's failure to expressly consider that opinion was harmless because Dr. Simonian's opinion is entirely consistent with the ALJ's finding that plaintiff did not have a severe mental impairment and did not have work-related mental functional limitations. See Molina, 674 F.3d at 1121-1122 (holding that an ALJ's error in failing adequately to discuss lay testimony was harmless where it was "inconsequential to the ultimate nondisability determination").

**Plaintiff's subjective testimony**

Plaintiff contends that the ALJ's credibility finding is defective because he improperly rejected the opinions of Dr. Suchman and Dr. Goldsmith, and because the ALJ failed to consider "plaintiff's exemplary work history." [JS 34-40].

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Treichler, 775 F.3d at 1102; Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008). "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (same). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367

F.3d at 885. However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Since the ALJ permissibly rejected the opinions of Dr. Suchman and Dr. Goldsmith, there is no merit to plaintiff's suggestion that the ALJ's evaluation of that evidence undermined the reliability of his credibility finding. Plaintiff's work history is one factor, among others, that the ALJ may consider. See Bray, 554 F.3d at 1227. Even assuming that the ALJ erred in failing to consider plaintiff's work history as a factor buttressing her credibility, the error was harmless because the ALJ articulated other specific, clear, and convincing reasons that are sufficient to support his credibility finding. Those reasons (none of which are challenged by plaintiff as factually or legally defective) include multiple specific inconsistencies within plaintiff's testimony, and between her testimony and other evidence in the record; evidence that plaintiff stopped working because she was laid off, rather than because of any alleged disability; plaintiff's limited treatment history; plaintiff's relatively normal range of daily activities, which included assisting her parents with their meals, medical appointments, and other daily activities; plaintiff's providing in-home support services to a paying client four to six hours a week; driving several times a week; plaintiff's going out alone; plaintiff's shopping for herself and for her client a total of about three times a week; plaintiff's dusting, doing dishes, sweeping, cleaning toilets, and helping with pet care; plaintiff's watching television; and plaintiff's attending church monthly. [AR 22-23, 26-29]. See Molina, 674 F.3d at 1112-1113 (stating that the ALJ may use "ordinary techniques of credibility evaluation" and may consider "inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct," "whether the claimant engages in daily activities inconsistent with the alleged symptoms," and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting," and remarking that "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (holding that the ALJ properly relied on the absence of objective evidence to corroborate the alleged severity of the claimant's subjective complaints and on her "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances").

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED.**

May 25, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge